UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TELLIS SOFTWARE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION G-07-00072 |
| | § | |
| POKERTEK, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Tellis Software, Inc. ("Tellis") brings this action against defendants PokerTek, Inc. ("PokerTek"), Gehrig "Lou" White ("White"), and James Crawford ("Crawford") alleging breach of contract, fraud, conversion, and unjust enrichment. Pending before the court is defendants' motion to dismiss (Dkts. 7, 11) this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, defendants move to transfer venue to the United States District Court for the Western Division of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1404(a). After considering the arguments of counsel, the evidence of record, and the applicable law, the court concludes that the defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction should be DENIED, and the defendants' alternative motion to transfer venue of this action should be GRANTED. Because the court finds that a transfer of venue is warranted, the defendants' 12(b)(6) motion seeking the dismissal of plaintiff's fraud and conversion claims will be DENIED WITHOUT PREJUDICE to refiling in the transferee court. Accordingly, defendants' motion to dismiss and alternative motion to transfer venue (Dkts. 7, 11) is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL ALLEGATIONS

Before discussing the merits of the pending motions, the court will briefly recite the facts as alleged in plaintiff's first amended complaint. *See* Dkt. 8 ¶¶ 8–26. On November 24, 2003, PokerTek's CEO Lou White contacted Tellis's President Nick Trout via email about developing software for PokerTek, a North Carolina corporation. PokerTek, a budding company in the electronic gaming market, was interested in building poker tables with computer touch-screens at each player's position, which could be utilized to make necessary poker moves without the assistance of a live dealer. Of note for the instant motion, White became acquainted with Tellis through an online advertisement indicating that Tellis was based in Tomball, Texas, within the confines of the Southern District of Texas. On November 26, 2003, two days after their initial contact, White called Trout and actively recruited him for the next two weeks to secure Tellis's services. By mid-December 2003, after a meeting in Las Vegas, Nevada, White hired Tellis to develop the software that would power its electronic poker tables.

Over the next nine months, Trout diligently worked to perfect his software for PokerTek's tables. He completed 99% of his work from his office in the Southern District of Texas, and he worked an average of fifteen hours a day, seven days a week. Throughout this period, the PokerTek parties remained in constant contact with Trout via telephone and email regarding the financial compensation package for Tellis. White told Trout, allegedly with fraudulent motives, that Tellis would receive compensation in the form of equity in PokerTek and additional bonuses tied to the number of tables sold using Tellis's software. On May 1, 2004, PokerTek and Tellis memorialized this and other verbal terms and executed a written software development agreement. As previously agreed, Tellis had the potential to earn a 2% equity interest in PokerTek and bonuses that could reach

$730,000. Tellis complied with its obligations and delivered the prototype software in early May 2004 while continuing to develop the final product.

In July 2004, the individual defendants and Trout met in North Carolina with various investors and casino representatives. During the meeting, the attendees played actual games of electronic poker on a prototype table with software designed by Tellis. As the project neared completion, PokerTek requested in August that Tellis deliver the completed source code that would be necessary to use the final software. Soon after receiving the source code, however, problems arose in the parties' relationship. White and Crawford approached Trout and explained that they wanted to change the compensation structure of the agreement so that Tellis would receive restricted PokerTek stock options, and not the 2% equity interest as originally agreed under the verbal and written contract between the parties. Trout declined any such change to the agreement. Then, on September 8, 2004, PokerTek terminated the software contract, purportedly due to Tellis's failure to deliver a completed technical system design to PokerTek by May 5, 2004. PokerTek has not honored any other terms of the agreement since the termination, including the terms of payment to Tellis.

Lastly, on September 14, 2004, White and Crawford filed an application with the U.S. Patent and Trademark Office ("PTO") in which they allegedly claimed authorship for the concept Tellis developed, namely a "*system and method of displaying or obscuring electronic playing cards.*" Dkt. 8 ¶ 24. According to Tellis, these statements were knowingly and patently false when made to the PTO. This conduct in particular led to Tellis's claims for fraud and conversion of Tellis's proprietary concept. In all, Tellis has raised claims against PokerTek, White, and Crawford for breach of contract, fraud, conversion, and unjust enrichment.

On February 5, 2007, Tellis filed its original complaint in this court. *See* Dkt. 1. After defendants moved to dismiss the complaint on March 27, 2007, *see* Dkt. 7, Tellis filed a first amended complaint. *See* Dkt. 8. The defendants then filed a supplemental combined motion to dismiss on April 13, 2007. *See* Dkt. 11. The parties have since filed several responsive pleadings to this motion, and the issues raised therein are now ripe for decision.

## II. ANALYSIS

The defendants argue that this court should dismiss plaintiff's case for lack of personal jurisdiction over the defendants or, in the alternative, that this court should transfer the action to the U.S. District Court for the Western District of North Carolina, Charlotte Division. The court will address each of these primary arguments in turn.

### A. PERSONAL JURISDICTION

*1. Standard of Review*

When a defendant contests personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need only establish personal jurisdiction by a *prima facie* showing of evidence in the absence of an evidentiary hearing. *Id.* In fact, "[t]he court shall accept as true [the plaintiff's] uncontroverted allegations (so long as the allegations are not merely conclusory) and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The *prima facie* showing may be made through the use of affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *See Washington v. Norton Mfg. Co.*, 588 F.2d 441, 443 (5th Cir. 1979).

In a diversity action, a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the applicable law of the forum state. *See* FED. R. CIV. P. 4(e)(1), (h)(1), and (k)(1). Because Texas's long-arm statute has been interpreted to extend to the limits of due process, the critical issue before the court on the jurisdictional question is whether subjecting the defendants to suit in Texas would be consistent with the Due Process Clause of the Fourteenth Amendment. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 1997); *see Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408, 104 S. Ct. 1868 (1984).

Consistent with due process, a person is subject to the jurisdiction of the forum court when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum . . .[,] and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).

In analyzing the first prong, a court can find that a defendant has established minimum contacts with the forum under one of two theories—general or specific jurisdiction. *Id.* "General jurisdiction" refers to personal jurisdiction based on a defendant's contacts with the forum that are "continuous and systematic" yet unrelated to the instant controversy. *Cent. Freight Lines*, 322 F.3d at 381 (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868 (1984)). Such substantial contacts with the forum puts the defendant on reasonable notice that he can be haled into a court within that jurisdiction. *See Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985).

Here, as the plaintiff has not argued the applicability of general jurisdiction, the real dispute centers around whether the PokerTek parties are properly before this court under a theory of specific jurisdiction. Each defendant's contacts are sufficient to support the exercise of specific jurisdiction when that party has "'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or related to those activities.'" *See Cent. Freight Lines*, 322 F.3d at 381 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985)). A single contact with the forum can be enough to satisfy specific jurisdiction if the cause arises from that contact. *Micromedia v. Automated Broad. Controls*, 799 F.2d 230, 234 (5th Cir. 1984).

2. *Minimum Contacts*

After taking the plaintiff's allegations as true, the court finds that each of the defendants has contacts with the state of Texas related to the facts of the instant case that are sufficient to support an exercise of specific jurisdiction. *See Burger King*, 471 U.S. at 474–79.

Under Fifth Circuit precedent, a nonresident party subjects itself to jurisdiction in this forum when it reaches out to a Texas corporation by telephone and mail with the aim of establishing a long-standing contractual relationship. *See Cent. Freight Lines*, 322 F.3d at 382 (citing *Burger King*, 471 U.S. at 479–80); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil."). PokerTek's CEO, Lou White, contacted Nick Trout in late November 2003 after viewing a Tellis advertisement on the Internet. *See* Dkt. 13, Ex. A ¶ 3. Although the parties dispute whether White initially believed that he was dealing with Tellis or a separate Illinois company, the court construes the facts in favor of the plaintiff and finds that PokerTek and White originally were dealing with a company they knew was a Texas resident. Further, from late December 2003 to April 2004, defendant James Crawford had discussions with Trout on many

6

occasions about the financial compensation for Tellis, a key set of terms later memorialized in the parties' software development contract. *See* Dkt. 13, Ex. A ¶ 5. At any rate, at the time the contract was signed in May 2004, the defendants should have foreseen that the agreement would have produced a substantial exertion of labor and economic activity in the forum state.

Additionally, the evidence of record suggests that the defendants' allegedly fraudulent conduct was directed toward Texas, supporting the imposition of specific jurisdiction in this case. *See Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482 (1984). Accepting the plaintiff's facts as true for purposes of the jurisdictional analysis only, each of the defendants made fraudulent statements or perpetrated fraudulent acts with the foreseeable consequence of causing damage to plaintiff's business and financial interests in Texas. *See* Dkt. 13, Ex. A ¶¶ 3–12. These contacts strengthen the court's conclusion that the defendants have established the requisite minimum contacts with Texas through conduct relevant to the plaintiff's causes of action.

In sum, each of the defendants "purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King*, 471 U.S. at 472. The plaintiff has demonstrated that the defendants have contacts with this forum sufficient to satisfy the first prong of the due process analysis.

   *3. Traditional Notions of Fair Play and Substantial Justice*

Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). The defendant must make a "compelling case." *Burger King*, 471 U.S. at 477. In determining whether the exercise of jurisdiction is fair and reasonable under the second prong of the due process analysis, the court must balance: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's

interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' common interest in fundamental social policies. *Asahi Metal Indus. Co. Ltd. v. Superior Court of California*, 480 U.S. 102, 115, 107 S. Ct. 1026 (1987); *Ortega v. Seaboard Marine Ltd.*, 400 F. Supp. 2d 987, 990 (S.D. Tex. 2005).

Although the court finds, for reasons explained below, that this case should be transferred to the Western District of North Carolina, the court nevertheless concludes that for jurisdictional purposes the defendants have not met the heavy burden of demonstrating that the exercise of personal jurisdiction over them does not "'comport with fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). As the *Burger King* Court explained:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, *a defendant claiming substantial inconvenience may seek a change of venue.*

*Id.* (citations omitted) (emphasis added). The defendants have sought a change of venue in this case; given that the convenience considerations weigh in favor of transfer and that defendants have not made a compelling case on the second prong's other factors, exercise of jurisdiction in this case will not offend traditional notions of fair play and substantial justice. Accordingly, the plaintiff has also made a *prima facie* showing under the fairness prong of the personal jurisdiction analysis.

 4. *Conclusions on the 12(b)(2) Motion to Dismiss*

Because the court concludes that the defendants have minimum contacts with Texas related to the facts of this case and that the exercise of personal jurisdiction over them does not offend traditional notions of fair play and substantial justice, the assertion of this court's power over the

defendants is consistent with due process. Therefore, defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction will be denied.

### B. TRANSFER OF VENUE

As an alternative to dismissal under Rule 12(b)(2), the defendants seek transfer of plaintiff's case to the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1404(a).

*1. Standard of Review*

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a); *see also In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). This statute "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805 (1964). When a party to seeks to transfer an action to a purportedly more convenient forum, the movant bears the burden to demonstrate that the considerations of convenience and justice weight heavily in favor of a transfer. *See, e.g., Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). The factors evaluated in this analysis are entrusted to the sound discretion of the district court. *See Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970).

The court engages in two basic inquiries in exercising this discretion. First, as a threshold matter, the court must determine that venue would lie in the proposed transferee court, that is, that the transferee district qualifies under the applicable venue statutes as a judicial district where the action "might have been brought." § 1404(a); *In re Horseshoe Entm't*, 337 F.3d at 433. Generally speaking, venue is appropriate in any district where a defendant resides, if all defendants reside in the same state. *See* 28 U.S.C. § 1391(a)(1). It is undisputed that all three defendants are citizens of

9

North Carolina, and that PokerTek is a resident of Matthews, North Carolina, within Mecklenburg County and the confines of the Western District. *See* Dkt. 8 at 1 ¶ 2 (plaintiff admits that PokerTek is a corporation with its principal place of business in Matthews, North Carolina); § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Thus, as all of the defendants reside in North Carolina and PokerTek resides in the Western District, that district is an appropriate venue where this action "might have been brought." § 1404(a).

Once the court is satisfied that the transferee district is a proper venue for the action, the court must then turn to what is in most cases, including the instant dispute, the critical issue—whether the "convenience of parties and witnesses, in the interest of justice" requires the district court to transfer the action to another district. "The determination of 'convenience' turns on a number of private and public interest factors, none of which are [sic] given dispositive weight." *In re Volkswagen*, 371 F.3d at 203 (quoting *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

*1. The Private & Public Interest Factors*

Although different courts recite these considerations in varying ways, the private interest factors include the following: (a) the plaintiff's choice of forum; (b) the relative ease of access to sources of proof; (c) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252 (1981); *In re Volkswagen*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *In re Volkswagen*, 371 F.3d at 203.

### a. Plaintiff's Choice of Forum

The Fifth Circuit has recently confirmed that plaintiffs' choice of forum is a factor to be considered but is neither conclusive nor determinative. *See In re Horseshoe Entm't*, 337 F.3d at 434. In this case, the plaintiff's principal place of business is in Tomball, Texas, within the Southern District of Texas. Since plaintiff's choice of forum is entitled to some deference, this factor weighs against transfer.

### b. Ease of Access to Sources of Proof

Defendants contend that substantially all of their documentary evidence is located in North Carolina. *See* Dkt. 7 at 19. Plaintiff responds that this case is not document-intensive and that all of its documents are stored in one box at plaintiff counsel's law firm in Austin, Texas. *See* Dkt. 13 at 22. Because it appears that both sides have documents that can be easily produced for discovery and trial in either forum, this factors weighs neither for nor against transfer.

### c. Convenience of Parties and Witnesses

The convenience to witnesses concern, which subsumes the availability of compulsory process and cost of obtaining witnesses factors, is often cited as the most important concern under the 1404(a) transfer analysis. *See, e.g., Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Becnel v. Community Action Agency, Inc.*, 207 F. Supp. 2d 520, 522 (M.D. La. 2001); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed. 2007). "[I]n considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. The

convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Dupre*, 810 F. Supp. at 825. Furthermore, the court is particularly concerned with the convenience of key nonparty witnesses and the costs associated with securing their attendance, rather than of party witnesses and party employees, whose testimony can be readily secured by the employer. *See State Street Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 855 F. Supp. 1392, 1397 (S.D. Tex. 1992). Lastly, movants for transfer "must specifically identify key witnesses and outline the substance of their testimony." *Dupre*, 810 F. Supp. at 825.

This case, at its core, is a simple contract action that turns on the validity of defendants' stated reason for terminating the software development agreement. Based on the plaintiff's allegations in its amended complaint, the plaintiff will likely contend that the defendants fraudulently procured an agreement with Tellis while secretly intending to breach that contract after receipt of the final, valuable product from Trout. Defendants will likely maintain that they had a lawful reason to terminate the contract and deny Trout any further compensation because the software they received from him was fatally flawed, forcing PokerTek to develop its own proprietary software for its end product. Thus, key witnesses in this case will address the quality of Tellis's software and the need, if any, for developing an alternative computer program. The court's inquiry thus focuses on the convenience of witnesses who will testify on these key issues.

Defendants have identified eleven nonparty witnesses who could testify about these issues, aside from the twenty-five PokerTek employees who may testify about Tellis's software, whose convenience is accorded lesser weight. The defendants provide detailed explanations of the substance of each witness's testimony, including their interaction with the Tellis software or its replacement program. By contrast, plaintiff has identified only four Houston-based witnesses who

have personal knowledge of the quality of the Tellis software. *See* Dkt. 13 at 20 ¶ 44 (identifying Tray Golden, Tammy Wisenbaker, and Fred and Patricia Fischer as witnesses who "will testify on the quality of the PokerTek software system").

As stated above, the defendants' key nonparty witnesses more than double plaintiff's key witnesses. If the trial were to proceed in Houston, the cost of obtaining the live testimony of defendants' nonparty witnesses at trial would be quite substantial and far outweigh the cost of securing four Texas witness' testimony in North Carolina. The defendants would also encounter serious prejudice in this forum because most, if not all, of their witnesses are beyond the subpoena range of this court. Without question, a Houston district court cannot compel witnesses in North Carolina to testify in this forum, which is more than 100 miles from Charlotte. *See* FED. R. CIV. P. 45(c)(3)(A)(ii). Because of the serious inconvenience that would accrue to defendants' key nonparty witnesses absent a transfer which far outweighs the inconvenience that would be sustained by plaintiff's witnesses after a transfer, this factor weighs strongly in favor of a venue change.

### d. Administrative Difficulties from Court Congestion

Although the parties have not briefed the court on this factor, the court notes that recent statistics display near parity between both district's relative caseloads. The time between filing and disposition of an average case in 2006 in the Southern District of Texas is 8.6 months, whereas the average case during the same time period in the Western District of North Carolina was adjudicated within 9.8 months. *See* FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT COURTS (2006), http://www.uscourts.gov/cgi-bin/cmsd2006.pl. As the congestion levels in both districts are almost equivalent, the court concludes that this factor is neutral.

### e. Local Interests

Regarding the local interests factor, plaintiff argues that Texas has a strong interest in

13

adjudicating a case involving possible harm sustained by a Texas corporation through nonresident defendants' extracontractual and tortious conduct. The court agrees. However, the court also notes that North Carolina has an equally strong interest in deciding a matter involving conduct by its citizens originating in that state and involving interstate business relations. Consequently, this factor is also neutral.

### f. Familiarity of the Forum with the Governing Law

The parties have not specifically addressed this issue, but the court notes that North Carolina law will likely apply to at least plaintiff's breach of contract claim. Under the parties' complete and final software development agreement, Tellis and PokerTek consummated a choice-of-law clause mandating that North Carolina law would apply in any contractual dispute. *See* Dkt. 7 Ex. A ¶ 7. Thus, absent a successful challenge to the application of this clause by either party, North Carolina law will apply to the contract claims. Regarding the tort claims for fraud and conversion, the court cannot know at this time which state's laws will apply, although the court is confident that either North Carolina or Texas law will apply to these claims. Therefore, because North Carolina law will probably apply to at least one and perhaps all of plaintiff's claims, this factor also weighs in favor of transfer.

### g. Avoidance of Unnecessary Conflict of Law Issues

Again, the parties have not addressed this issue, but the conflict-of-laws questions, if any, will likely arise in either the transferor or transferee court. Thus, this factor weighs neither for nor against transfer.

### 2. *Conclusions on the Propriety of Transfer*

Although the bulk of the factors are neutral, the convenience concerns and the probable application of North Carolina law strongly favor transfer and only one factor—plaintiff's choice of

14

forum—disfavors transfer. Accordingly, defendants have met their burden to demonstrate that the § 1404(a) factors substantially weigh in favor of transfer away from plaintiff's chosen forum, and defendants' motion to transfer venue will be granted.

### III. CONCLUSION

Because the court concludes that the defendants have minimum contacts with Texas and that the exercise of personal jurisdiction over the defendants does not offend traditional notions of fair play and substantial justice, the defendants' Rule 12(b)(2) motion to dismiss is DENIED. Nevertheless, the court concludes that the § 1404(a) transfer factors weigh heavily in favor of transferring this action to the Western District of North Carolina, Charlotte Division; for this reason defendants' alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is GRANTED. Finally, due to the court's decision to transfer this action, the defendants' 12(b)(6) motion to dismiss plaintiff's fraud and conversion claims for failure to state a claim is DENIED WITHOUT PREJUDICE to refiling in the transferee court. Thus, in sum, defendants' motion to dismiss and alternative motion to transfer venue (Dkts. 7, 11) is GRANTED IN PART and DENIED IN PART.

This action is TRANSFERRED to the United States District Court for the Western District of North Carolina, Charlotte Division.

Signed at Houston, Texas on August 10, 2007.

Gray H. Miller
United States District Judge